MERRYWEATHER GOGGLE COMPANY, Appellant, *v.* HARRY L. LA VALLE, Respondent.

*Sale — agreement to pay debt of vendor — evidence.*

Appeal by the plaintiff from a judgment of the Broome County Court, entered in the office of the clerk of said county on April 8, 1918, affirming a judgment of the City Court of Binghamton in favor of defendant dismissing the complaint.

Judgment affirmed, with costs. All concurred, except John M. Kellogg, P. J., dissenting, with a memorandum.

JOHN M. KELLOGG, P. J. (dissenting): The plaintiff, a creditor of the Binghamton Auto Supply Company, brings this action against the defendant to recover his bill against said company, alleging that the defendant, when he bought the business of the company, assumed and agreed to pay the bill as a part of the purchase price, and introduced the following letter to prove his claim:

"BINGHAMTON, N. Y., *August 5th*, 1917.
"MERRYWHEATHER GOGGLE Co.,
          "New York, N. Y.:

"GENTLEMEN.— The Binghamton Auto Supply Co. has been purchased by the writer, who has assumed all indebtedness. Kindly send itemized statement of your account and I shall endeavor to send check in full at an early date. Thanking you I remain, very truly yours,
               "H. L. LA VALLE,
                    "Prop.
               "Binghamton Auto Supply Co.,
                         "Binghamton, N. Y."

It is conceded by the pleadings that until about August 1, 1917, one Dunn was the sole owner and was carrying on the business of the supply company, and that from about that date the defendant has been the sole owner and carrying on the said business, it apparently being a retail stock of goods. The fair meaning of the letter is that the defendant has in proper form assumed and agreed to pay the bill. We are not to draw inferences for the sole purpose of defeating the plaintiff's claim, but are to take the letter as it reads, with the assumption that the defendant has admitted a legal liability. Apparently the defendant so far has escaped liability on the theory that the promise was not made to plaintiff or to anybody liable to him on the theory of *Vrooman* v. *Turner* (69 N. Y. 280). In my judgment that case, and the refinements on *Lawrence* v. *Fox* (20 N. Y. 268) have

no application here.  The doctrine of *Lawrence* v. *Fox* is progressive, and the courts are going far to require that a party who has received property under an agreement to pay a part of the purchase price to another, shall not escape liability on technicalities.  (*Seaver* v. *Ransom*, 180 App. Div. 734.)  We may with profit quote the concluding paragraph in *Lawrence* v. *Fox:* " No one can doubt that he owes the sum of money demanded of him, or that in accordance with his promise it was his duty to have paid it to the plaintiff; nor can it be doubted that whatever may be the diversity of opinion elsewhere, the adjudications in this State, from a very early period, approved by experience, have established the defendant's liability; if, therefore, it could be shown that a more strict and technically accurate application of the rules applied, would lead to a different result (which I by no means concede), the effort should not be made in the face of manifest justice." *Lawrence* v. *Fox* struggled against the old learning that a man might avoid the payment of money which he had agreed to pay to another unless there was a mutuality or privity between the party agreeing to pay and the party to whom the payment was to be made.  It seemed in the old time that a stranger, although intended to be benefited by the contract, should not have the benefit of it unless he was brought into privity with the contracting party.  That this case is removed from that contention is made clear by the fact that the defendant, after he had received the property under an agreement to pay the plaintiff, wrote to the plaintiff that he had agreed to pay him and promised to send him a check therefor.  It is urged that because Dunn swears that he turned the property over to another upon the same day that it was sold to the defendant, indicates that the agreement to pay the plaintiff was not made with Dunn but was made with the mortgagee.  The letter indicates a legal obligation to pay the plaintiff, and we can just as well assume that the contract was made with the plaintiff, or with Dunn, as with the mortgagee.  The inferences to be drawn should be those favorable to the plaintiff.  The amount and terms of the mortgage do not appear, nor the manner in which the mortgaged property was turned over under it.  It is not improbable that the mortgagee took the property and agreed to pay the debts.  A part of the property sold to the defendant came from the plaintiff, and was unpaid for.  If the business, as a going business, was transferred twice on the same day, it is quite evident that the Bulk-Sales Law was not complied with.  (Pers. Prop. Law, § 44.)*  If not, the sale could be treated as void, or the purchaser could be treated as a trustee for the benefit of the creditors.  In any event there was a legal or moral obligation to pay the plaintiff, and the defendant should not escape liability.  I, therefore, favor a reversal of the judgment of the County Court and of the City Court, with costs, and the remission of the matter to the County Court, with directions to enter judgment for the plaintiff, with costs.

---

* Consol. Laws, chap. 41 (Laws of 1909, chap. 45), § 44, as amd. by Laws of 1914, chap. 507.— [REP.