CHARLES H. BOWNE, Respondent, *v.* ELLIOT LYNDE, Respondent, WILLIAM H. BOWNE, Appellant.

Where a purchaser of part of mortgaged premises assumes to pay the mortgage as part of the purchase-money the portion so purchased becomes, in equity, the primary fund for such payment.

In an action to foreclose a mortgage covering two farms it appeared that L., the mortgagor, conveyed one of the farms to K., the latter assuming to pay, as part of the purchase-money, $2,500 of the mortgage. L. had contracted to purchase a piece of land of B., who agreed to take the bond of K., secured by mortgage on the farm so to be conveyed to him for part of the purchase-price, and concurrently with the conveyance from L. to K., the latter executed his bond and mortgage to B., who conveyed to L. as agreed. B. knew, when he took his mortgage, of the existence of the prior mortgage and of K.'s assumption of a portion thereof., *Held*. that the judgment properly directed the sale first of the farm conveyed to K.; that the circumstances under which the mortgage to B. was given did not change the equitable rights of the parties,

K. subsequently reconveyed the farm to L. who, in consideration thereof, agreed to and did convey ten acres of the farm to the wife of K., built a house thereon and procured a release thereof from the B. mortgage and agreed to protect it from the lien of the mortgage in suit. L. obtained the release from B. by giving him a guaranty to pay $250 of his mortgage *Held*, that this did not change the equities of the parties ; that if the legal effect of the reconveyance was to release K. from his contract of assumption no right of B. was affected and the release did not inure to his benefit.

(Argued December 7, 1882 ; decided January 16, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made September 20, 1881, which affirmed a judgment entered upon a decision of the court on trial at Special Term.

This action was brought to foreclose a mortgage executed by defendant Lynde to the New York Mutual Life Insurance Company to secure his bond for the sum of $4,200, which mortgage was assigned to plaintiff.

The controversy was between Lynde and defendant William H. Bowne. The mortgage in suit was executed in July, 1871, it covered two farms, one known as the Gouverneur farm, the other as the Rossie farm. In March, 1876, Lynde sold to defendant Kelsey the Rossie farm for $6,400, and at the same time bought of defendant William H. Bowne seventy-five acres of land for $3,000. Kelsey paid W. H. Bowne the $3,000, in pursuance of an agreement between the three parties, as follows : He assigned to Bowne a bond and mortgage which he, Kelsey, held on other lands for $800, and he gave to Bowne a mortgage on the Rossie farm for $2,200. It was a part of the agreement and understanding between the three parties that Kelsey was to assume and pay upon the insurance company mortgage the sum of $2,500 as and for a part of the purchase-price of the Rossie farm, and William H. Bowne took his mortgage for $2,200, with full knowledge of such fact. The remainder of the $6,400, to-wit, $900, Kelsey secured to Lynde by a mortgage upon the Rossie farm, subject to the two other mortgages. Wil-

liam H. Bowne supervised the execution of the foregoing arrangements, and he still holds the $2,200 bond and mortgage given him by Kelsey as aforesaid. In December, 1876, in pursuance of a contract between Lynde and Kelsey, the latter reconveyed the Rossie farm to the former, who satisfied the $900 mortgage thereon, conveyed ten acres thereof to Mrs. Kelsey, built a house thereon, and procured the ten acres to be released by defendant Bowne from the lien of his $2,200 mortgage; he also agreed to protect the ten acres from the lien of the insurance company mortgage. Judgment was rendered declaring the mortgage of defendant Bowne subject to $2,500 of plaintiff's mortgage, ordering the Rossie farm, excepting the ten acres, to be first sold, and $2,500 of the plaintiff's mortgage, with unpaid interest thereon, to be paid plaintiff out of the proceeds, remainder, if any, to be paid defendant Bowne to the amount unpaid upon his mortgage. If necessary the Gouverneur farm was ordered to be sold and the proceeds to be applied in payment of the balance of plaintiff's mortgage.

*Leslie W. Russell* for appellant. The intent of Lynde cannot contravene the legal effect of his agreement with appellant. (*Schryver* v. *Teller*, 9 Paige, 173 ; *Kellogg* v. *Rand*, 11 id. 60; *Skeele* v. *Spraker*, 8 id. 182.) The foreclosure of the lien, to which a security given by the debtor in satisfaction of his own debt is subject, revives the debt of his debtor and makes him equitably bound to satisfy the security thus rendered valueless. (*Thomas* v. *Austin*, 4 Barb. 265.) If the arrangement of March 8, 1876, bore the legal construction the court has put upon it, the rescission of that trade restored Kelsey to his original rights, relieved him of the obligation to pay the $2,500, and made him simply a surety of Lynde for the $2,200 owing appellant. (*Fairchild* v. *Lynch*, 46 N. Y. Supr. Ct. 1.) The reconveyance charged the Gouverneur farm primarily, even though Lynde had not been personally liable for the debt. (*Hopkins* v. *Wooley*, 81 N. Y. 77.) By the transaction of December, 1876, Lynde has destroyed the security afforded by the obligation of Kelsey, which appellant had the right to rely upon, and

which the court, to destroy appellant's equity, found to be binding on appellant, and therefore, apart from all other reason, he is in equity bound to save the appellant harmless from the effect of such a release, even if he does not become personally liable to pay the bond and mortgage of the appellant. (*Calvo* v. *Davies*, 73 N. Y. 215; *Marshall* v. *Davies*, 78 id. 421; *Develin* v. *Murphy*, 56 How. Pr. 327.)

*V. P. Abbott* for respondent.   The rule that the mortgaged premises, when the mortgage covers several parcels of land, shall be sold in the inverse order of alienation, is a rule of equity merely and liable to be varied by the equities of the case or by agreement of the parties. (*Patty* v. *Pease et al.*, 8 Paige, 277–284; *Wood* v. *Spalding*, 45 Barb. 602; *Guion* v. *Knapp*, 6 Paige, 35.) Had the premises been conveyed by Kelsey to any person other than the original vendor, no question seemingly could have arisen as to the liability of this farm to contribute $2,500 to the payment of the life insurance mortgage anterior to any payment upon the mortgage of defendant Bowne. (*Russell* v. *Pistor*, 7 N. Y. 171.) The reconveyance of the farm by Kelsey to Lynde was a mere conveyance of the equity of redemption, and by express agreement was not to change the relation of pre-existing liens except as to Lynde's individual mortgage, and except as to the ten acres released to Kelsey's wife. (*Cliff* v. *White*, 12 N. Y. 519; *Sheldon* v. *Edmonds*, 35 id. 285.) The consideration expressed in the deed from Kelsey to Lynde is not conclusive of his liability and is evidence only to support the conveyance. (*Wheeler* v. *Billings*, 38 N. Y. 263; *Murdock* v. *Gilchrist*, 52 id. 247; *Spicer* v. *Spicer*, 16 Abb. [N. S.] 127.)

ANDREWS, CH. J. Upon the sale of the Rossie farm by Lynde to Kelsey, the latter assumed to pay as part of the purchase-money, $2,500 of the mortgage to the Mutual Life Insurance Company, which covered the Rossie farm, and the Gouverneur farm also owned by Lynde. As the result of this arrangement, the Rossie farm, as between Lynde and Kelsey, was

primarily charged in equity with the payment of the mortgage debt assumed by Kelsey. For it is a plain rule of equity that where a purchaser of part of mortgaged premises assumes to pay the mortgage as part of the purchase-money the part of the premises so purchased becomes in equity the primary fund for the payment of the mortgage. (*Russell* v. *Pistor*, 7 N. Y. 171.) The Gouverneur farm, the title to which was retained, and is still held by Lynde, was, as a consequence of the assumption by Kelsey, secondarily liable for $2,500 of the insurance company mortgage. The defendant Bowne took his mortgage from Kelsey, and is bound by the same equity. He knew of the existence of the mortgage to the Mutual Life Insurance Company and of Kelsey's agreement with Lynde when his mortgage was executed. Leaving out of view the subsequent reconveyance by Kelsey to Lynde of the Rossie farm in 1879, it is plain that Lynde is entitled to call upon the court to enforce in this action the settled equity as between a grantor of part of mortgaged premises and a grantee who had assumed the payment of the mortgage as a part of the purchase-money, and to compel a sale of the granted premises in the first instance in exoneration of his remaining lands. The fact that the Bowne mortgage was given by Kelsey at the request of Lynde in part payment for the seventy-five acres of land purchased by Lynde from Bowne concurrently with the sale by Lynde to Kelsey of the Rossie farm, does not alter the situation or change the equitable rights of the parties. It was a condition of the purchase by Lynde from Bowne that the latter should accept the Kelsey bond and mortgage in payment *pro tanto* for his land. If the bargain has turned out to be a bad one for Bowne, by reason of the depreciation in value of the Rossie farm, that risk was assumed by him when he accepted the bond and mortgage. Lynde did not join in the bond of Kelsey or become responsible in any way for the mortgage debt. It was doubtless supposed at the time by all the parties that the Rossie farm, for which (with a few articles of personal property) Kelsey agreed to pay to Lynde $6,400, was ample security for $2,500 of the insurance company mortgage

and the $2,200 mortgage from Kelsey to Bowne. But if by reason of the depreciation in the value of the land it will not pay both liens, there is no equity in saddling the loss on Lynde, thereby depriving him of the benefit of his bargain with Bowne. This, however, would be the consequence if, as the defendant Bowne insists, the Gouverneur farm shall be directed to be first sold. It would in effect be compelling Lynde to pay the Bowne mortgage out of his property. This he has never obligated himself to do. Nor were the equities of the parties changed by the reconveyance from Kelsey to Lynde of the Rossie farm. The consideration of the reconveyance was the discharge by Lynde of the bond and mortgage for $900, taken from Kelsey for part of the original purchase-money on the sale of the Rossie farm and the conveyance by Lynde to Kelsey's wife of ten acres of the land, and his agreement to build a house thereon and to procure a release of the ten acres from the Bowne mortgage and to protect it against the lien of the insurance company mortgage. Lynde, in pursuance of his agreement with Kelsey, conveyed the ten acres to Mrs. Kelsey, and built a house thereon and procured Bowne to release it from his mortgage. The consideration of the release was the guaranty of Lynde to pay $250 and interest on the Kelsey bond and mortgage. There was no agreement between Kelsey and Lynde that the latter should assume the Bowne mortgage. On the contrary he expressly refused to do so. The only obligation he assumed in respect to it was upon his guaranty to Bowne, and this was limited to the amount stated. Lynde acquired by the reconveyance the equity of redemption only. The situation of Bowne was not changed His security was unaffected by the transaction. He had, as before, the mortgage and bond of Kelsey. Lynde was not bound to pay the insurance company mortgage for Bowne's protection. It was at his option to pay the liens on the Rossie farm or to allow the land to be sold thereon; and if he elected not to redeem, the land stood charged with the payment of the insurance company mortgage assumed by Kelsey. Bowne acquired no equity to have the whole burden of that mortgage shifted on to the Gouverneur farm by the

reconveyance of the Rossie farm to Lynde. The original equities subsisted after as before that conveyance. It is claimed that by the reconveyance Lynde released Kelsey from his personal liability upon his contract of assumption. There was no express release of Kelsey, but if this was the legal consequence of the transaction, no right of Bowne was affected. He was not privy to that contract and it did not inure to his benefit, and gave him no right of action in case of Kelsey's default. The point that in the adjustment of the equities between the parties notice should have been taken of the fact that Lynde was indebted to Bowne on his guaranty, is not well taken. That was an independent contract, not noticed in the pleadings, and not affected by the determination of the issue, and no equitable grounds appear for allowing this claim as an equitable set-off on defense.

We think the judgment is right and that it should be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.